# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

CORNELE A. OVERSTREET, Regional Director of the Twenty-Eighth Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board,

Petitioner,

v.

IGT D/B/A/ INTERNATIONAL GAME TECHNOLOGY,

Respondent.

Case No. 2:17-cv-01436-APG-NJK

**ORDER DENYING PETITION FOR TEMPORARY INJUNCTION**

(ECF Nos. 1, 3)

    Petitioner National Labor Relations Board Regional Director Cornele Overstreet requests an order temporarily enjoining respondent IGT from using subcontractors or non-unit employees for work normally undertaken by its technicians' union without first bargaining with the union. The Board also asks me to require IGT to furnish certain information about IGT's use of subcontractors and non-unit employees. IGT responds that the Board has not carried its burden of establishing both a likelihood of success and irreparable harm, each of which must be shown to support an injunction. I agree, and therefore deny the injunction.

    To qualify for a preliminary injunction, the Board must demonstrate: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships favors the plaintiff, and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Alternatively, the Board must demonstrate (1) serious questions on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships tips sharply in the its favor, and (4) an injunction is in the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden

of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotation and emphasis omitted).

I do not repeat the facts here, as they are adequately laid out in the pleadings and mostly agreed to by the parties. The merits of this case hinge on whether IGT is violating the August 31, 2016 Letter of Understanding (LOU) in which it agreed to an "interim" hiring procedure with the union. The LOU reads, in part, as follows:

> **Notification of Vacancies.** In the event that IGT is going to hire a temporary or regular full-time or regular part-time bargaining unit position in Southern Nevada, IGT may first fill the vacancy from existing employees of IGT. In the event that IGT does not select an existing employee for such vacancy, IGT shall secure applicants for the position from the Union's dispatch office. IGT will notify the Union's dispatch office of such vacancy and the nature of the vacancy, and the dispatch office shall furnish to IGT the required number of qualified and competent applicants. Applicants referred to IGT by the Union dispatch office must submit their resumes and be available to interview with IGT, according to IGT's schedule, within 10 days after IGT provides the Notice to the dispatch office, unless IGT specifies that applicants are needed within a shorter period of time, in which case IGT will provide the timing of the need with its notice to the Union. The dispatch office will only refer applicants to IGT who meet the qualifications for employment as stated in IGT's notice.
>
> **Employer's Discretion.** IGT shall have sole discretion to determine whether or not to hire any applicant. If IGT does not select an applicant who was submitted by the Union's dispatch office, IGT may hire from any source.

ECF No. 1 at 17–18. This much of the LOU seems straightforward. IGT must give the union a good faith opportunity to fill new positions before going to outside sources but retains discretion on that choice. This procedure apparently was the union's suggestion, to which IGT eventually agreed.

The last provision of the agreement, however, is the problem. It reads:

> **Use of Contractors.** Nothing in this Letter of Understanding shall be construed as waiving IGT's exclusive right to determine whether or not to hire an employee or utilize a contractor, and nothing waives

> the Union's right to request bargaining over the same where such
> obligation to bargain exists under the NLRA.

*Id.* at 18. The parties do not agree on what this clause means, and neither could clearly explain to me how to reconcile it with the described process. The Board's focus on the reservation of bargaining rights seems to nullify IGT's "sole discretion to . . . hire from any source" after following the process. IGT's interpretation seems to read out the union's reservation of bargaining rights.[1] I conclude on review of the evidence that serious questions exist about what the LOU means and whether IGT is violating it, but I do not find that the Board has carried its burden at this point of showing a likelihood of success on the merits.

Under the *Wild Rockies* "serious questions" test, the petitioner must show a likelihood of irreparable harm and that the balance of equities tips sharply in the petitioner's favor. The Board has not shown, however, that in the nine months since the LOU was signed, the bargaining unit has been significantly harmed. One union member contends that morale in the unit is declining. But actual membership numbers have stayed more or less the same in this period, and some new technicians have been hired into the unit pursuant to the LOU process. I am not convinced that awaiting the result of an administrative decision for a few additional months poses a likelihood of irreparable harm. The Board also has not shown that the balance of the equities tips sharply toward it. The union's legitimate interest in maintaining whatever bargaining rights it is entitled to under the LOU is tempered by IGT's interest in being able to hire employees in a timely fashion to meet its contractual duties to its clients. The Board's suggestion that IGT could apply to the Board for an "exigent circumstances" exception to the bargaining requirement does not alleviate this potential harm because approval of that exception routinely takes one to two months.[2]

The serious questions raised by this petition are best decided after careful evaluation by an Administrative Law Judge with expertise in this area, a process that will begin with a hearing

---

[1] The LOU also contains a clause allowing either party to terminate the agreement on written notice. The fact that neither party has done so suggests that both still see benefit from the LOU.

[2] Statement of Board attorney at June 5, 2017 hearing.

on June 13, 2017.  I will deny the Board's motion for an injunction and dismiss the petition without prejudice, so that the Board may revive its petition if the factual situation changes significantly while the administrative process is ongoing, especially with respect to irreparable harm.

IT IS THEREFORE ORDERED that the petitioner's application for a temporary injunction **(ECF Nos. 1, 3) is DENIED**.  The case is dismissed without prejudice.

DATED this 7th day of June, 2017.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE